## KIEFER VS. CARRIER.

*November 3 — November 22, 1881.*

REPLEVIN. *(1) Demand and refusal of property. (2) When action commenced. (3) What acts constitute a restoration of the property. (4) Damages for detention, how recoverable.*

1. After each of the parties had notified the other to keep off his premises, plaintiff's horses escaped upon defendant's adjoining land through a defective line fence which it was defendant's duty to maintain. Plaintiff's servant, sent for the purpose, meeting defendant near the latter's house, inquired if plaintiff's horses were there, stating that they had got out and he was after them. Defendant, knowing that there were horses upon his premises, which he thought might be plaintiff's, answered that there were horses in a certain field which he pointed out, but he said nothing, and nothing was said, about the servant or plaintiff taking them. *Held*, that there was a sufficient demand, and defendant's failure to give plaintiff express license to go upon the premises and take the horses was equivalent to a refusal.
2. Replevin commenced *in the circuit court* will not lie where the property was restored to plaintiff before the summons was *served*. *W. & W. Manuf'g Co. v. Teetzlaff (ante,* p. 211), distinguished.
3. Before service of the summons in this action, defendant's servants, by his direction, drove the horses along the street, loose, to plaintiff's residence, and said to plaintiff there that they delivered the horses to him. Plaintiff did not authorize them to go upon his premises or open any gate thereon, for the purpose of making a further delivery; and defendant's servants left the horses there in the street, within easy reach and control of the plaintiff, where they remained for some hours, and until after service of the summons. *Held*, as matter of law upon these facts, that defendant had restored the property before the action was commenced.
4. Whether plaintiff could, *in this action*, recover damages for defendant's unlawful *detention* of the property, not determined.

APPEAL from the Circuit Court for *Fond du Lac* County.

Replevin, for seven horses of the plaintiff, which, the complaint alleges, were unlawfully detained from his possession by the defendant. The answer is a general denial. The case is stated in the opinion. There was a verdict for the plaintiff as follows: "The jury find that the plaintiff is entitled to the possession of the property described in the complaint; that

the value thereof is the sum of $550; that the defendant did unlawfully retain the possession thereof from the plaintiff. We-find for the plaintiff." A motion for a new trial was denied, and judgment entered pursuant to the verdict. The defendant appealed.

. For the appellant there was a brief by *Giffin & Williams*, and oral argument by *Mr. Williams.*

*A. M. Blair*, for the respondent.

Lyon, J. The lands of the parties adjoin. The plaintiff's horses escaped from his premises through a defective line fence which it was the duty of the defendant to repair, and went upon the land and into an enclosure of the defendant. They remained there two days. This is the alleged unlawful detention complained of.

The controlling questions in the case are: (1) Was there a demand of the horses by the plaintiff, and a refusal by the defendant to permit him to take them? and (2) Did the defendant restore them to plaintiff before this action was commenced?

1. The parties are near neighbors, are closely related by marriage, and should be friends, but they are not. Before this alleged cause of action arose, they had quarreled and each had notified the other to keep off his premises. That fruitful source of trouble, a defective line fence, became an element in the controversy and intensified their hostility to each other. .

Missing his horses from his field on the morning of June 23d, and finding by their tracks that they had gone upon the premises of the defendant through the defective line fence, the plaintiff, with his hired man, drove to the house of defendant, when he saw his horses in the defendant's yard or field. He remained in the street and sent his hired man to the defendant. The defendant and plaintiff's hired man met near the house, and the following is the defendant's version of what passed between them: "The hired man came near me and

says, 'Are *Mr. Kiefer's* horses here?' Said I, 'I don't know sir.' Said he, 'They have got out and I am after them.' Said I, 'There are horses back of the barn — in the pasture back of the barn.' Said he, 'Which pasture?' I pointed him the direction just around the barn. 'There,' said I. That is all I remember being said. I did not say to him that he could take the horses if they were *Kiefer's;* nothing was said about his taking of them." He also testified that he thought they might be plaintiff's horses.

This certainly was a sufficient demand of the horses. The defendant did not revoke his previous notice prohibiting the plaintiff from going upon his premises, and said nothing which amounted to a license to the plaintiff to do so. Had the plaintiff gone upon the premises and taken his horses, he would have been a trespasser. Under these circumstances it was clearly the duty of the defendant, when informed that the plaintiff desired to get his horses, to give the latter express license to go upon his premises and take them. The failure to do so was equivalent to a refusal to comply with the plaintiff's demand. We conclude, therefore, that the testimony, considered most favorably for the defendant, establishes a demand of the horses by the plaintiff, and a refusal by the defendant to deliver them, or, what is the same thing, to allow plaintiff to take them.

2. We are next to determine whether the defendant restored the horses to the plaintiff before this action was commenced. The testimony, taken most favorably for the plaintiff, is, that on the morning of June 25th the defendant's brother and hired man, by direction of the defendant, drove the horses along the street, loose, to the plaintiff's residence. They found the plaintiff there, and the brother asked him, "Are these your horses?" The plaintiff did not reply. He then asked, "Are you *Mr. Kiefer?*" The plaintiff replied in the affirmative. He then repeated the first question. The plaintiff was silent. A third time he asked, "Are these your horses?" and then the

plaintiff replied that there would be a man along by and by who would tell him whose horses they were. The brother then said to plaintiff, "We deliver these horses to you," and left. During this conversation the horses were in the street in the immediate vicinity, although some of them had run a short distance past the plaintiff's house, and the defendant's men left them there. They were within easy reach and control of the plaintiff, and so remained until several hours later, when, after the sheriff had served the summons and other papers in the action, the plaintiff opened a gate and they voluntarily went into his enclosure. As the plaintiff puts it, "they were glad to come home."

It must be remembered that the plaintiff had notified the defendant to keep off his premises, and that had his agents gone upon such premises or opened a gate to make actual delivery of the horses thereon, they would have been trespassers, and probably the defendant would have been liable for their unlawful act. Under these circumstances, it was the plain duty of the plaintiff (if the delivery was tendered in time) to signify to defendant's agents where he desired them to place the horses. Failing to do so, he cannot be heard to say that they were not effectually delivered to him in the highway. We thus apply against him the same rule of law which has already been applied in his favor against the defendant in respect to the demand of, and refusal to deliver, the property. We accord to each the rights, and hold each to the liabilities, of the belligerent attitude in which each had placed himself towards the other; and this is most persuasive justice.

It is obvious that the plaintiff is not entitled to a judgment that the defendant unlawfully detains the horses, unless the latter so detained them when the action was commenced. The testimony warrants a finding that the summons in the action, with an affidavit of plaintiff for an immediate return of the property, was delivered to the sheriff for service on June 24th. But the bond required by statute (R. S., 734,

sec. 2720) was not executed, nor the service made, until the afternoon of June 25th, several hours after the horses were restored to the plaintiff. It is provided by statute (section 2629) that "a civil action in a court of record shall be commenced by the service of a summons." We are not aware of any rule of law which takes this case out of the statute. True, it was held in *Wheeler & Wilson Manuf'g Co. v. Teetzlaff*, *ante*, p. 211, that an action of replevin in a justice's court cannot be maintained if the plaintiff was in actual possession of the property claimed when he filed his affidavit (which is the complaint in the action) and when the writ was issued, notwithstanding the property thereafter came to the possession of the defendant (who refused to deliver it to the plaintiff on demand) before the writ was served.

The distinction between an action of replevin in the circuit court and one brought before a justice of the peace is obvious, and an examination of the opinion by Mr. Justice TAYLOR, in the case above cited, will show that the grounds upon which that decision is rested are not applicable to this case. We conclude, therefore, that the horses were restored before the action was commenced, and hence that judgment could not properly go against the defendant that he unlawfully detained them. And further, we think the evidence proved conclusively that such restoration was so made. The learned circuit judge submitted that question of fact to the jury. This was error. He should have held on the evidence that the horses were restored to plaintiff before the action was commenced. The error was material, for manifestly the jury found that the horses were not so restored.

It was suggested in argument that, conceding the property to have been restored to plaintiff before the action was commenced, and that strictly the judgment is erroneous, yet the horses were unlawfully detained by the defendant two days, and the plaintiff may recover his damages therefor in this action. The argument is, that, inasmuch as the plaintiff is

entitled to judgment in the action, the defendant is not injured by a judgment which, although irregular, merely confirms plaintiff's right to the horses, which right defendant admits. Were it conceded that the plaintiff may recover his damages in this action notwithstanding it must fail as an action of replevin, there would be great force in the argument, were it not for the question of costs. As the judgment stands, the plaintiff would recover full costs. But if the action should proceed as an ordinary action of tort to recover damages for the two days' unlawful detention of the property, unless the recovery should be $50 or more, the defendant would recover costs. R. S., 771, section 2918, subds. 3, 5, and sec. 2920. Hence, it may be very material to the defendant that judgment in replevin should not go against him, although he may be liable in the same action to respond in damages for his tort.

We reverse the judgment of the circuit court because he improperly submitted to the jury the question whether there was a restoration of the horses to the plaintiff before the action was commenced, when he should have held it a verity in the case that they were so restored. We leave the question undetermined whether or not the plaintiff may recover his damages in this action after it has failed as an action of replevin. We do not decide, therefore, whether the court should or should not have nonsuited the plaintiff.

If the parties desire to litigate and settle the above question in this action, they may do so, but we cannot assure them that there is any reasonable prospect that the result will compensate them for the vexations and expenses of the contest. Upon the whole, we are constrained to say to them, in the language of Judge Cooley in a late case, that " we consider the case one for mutual concessions." *Davidson v. Davidson*, 10 N. W. Rep., 179 (Mich.).

*By the Court.*— Judgment reversed, and cause remanded for a new trial.